IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY | ) | |
| | ) | |
| | ) | No. 08 C 786 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Coar |
| | ) | |
| SCHWARTZ COOPER, CHARTERED | ) | |
| | ) | |
| Defendant. | ) | |

**SCHWARTZ COOPER'S RESPONSE TO FEDERAL INSURANCE
COMPANY'S MOTION FOR EXPEDITED PRODUCTION AND
<u>ENFORCEMENT OF AN ARBITRATION SUBPOENA</u>**

Schwartz Cooper Chartered ("Schwartz Cooper"), by its attorneys, Seth Rosenberg and Richard Schultz, submits this response to Federal Insurance Company's ("Federal") Motion for an Expedited Production and Enforcement of an Arbitration Subpoena.

**INTRODUCTION**

This dispute arises out of Schwartz Cooper's assertion of the attorney-client privilege (the "Privilege") in response to a subpoena for documents served by Federal.  The subpoena, dated January 10, 2008, was issued in an arbitration proceeding initiated by Federal against EPS Solutions Corp. and Enterprise Profit Solutions Corp. (collectively "EPS"), Schwartz Cooper's former clients.  Federal claims that Schwartz Cooper is precluded from asserting the Privilege based on an order dated July 26, 2007 (the "Order") issued by the arbitrators on Federal's motion to compel the production of documents.  The Order directs production of the documents generated by, and in possession of, EPS' law firm, Bollinger Ruberry & Garvey ("BRG"), which represented EPS.  Federal claims the Order applies as a de facto determination that Schwartz Cooper cannot assert the Privilege in response to Federal's subpoena.

470688.3 999990-09999

The Order granting Federal's motion to compel production of documents generated by BRG cannot stand as a substantive ruling on the assertion of the Privilege by Schwartz Cooper. The Order itself does not purport to have such a far reaching effect, nor can that result be garnered from the brief Federal submitted to the arbitrators on April 27, 2007, in support of its motion to compel production by BRG. Simply put, the Privilege is not waived on the basis of the Order.

### The Arbitrators' Order and Federal's Briefs Do Not Determine the Privilege Issue as it Relates to Schwartz Cooper

To support its claim that Schwartz Cooper cannot assert the Privilege, Federal's counsel provided Schwartz Cooper with the Order. Federal also provided Schwartz Cooper with Federal's brief in support of its motion seeking issuance of the Order. The Order is not a ruling on Schwartz Cooper's assertion of the Privilege; it simply states that the "motion to compel production of documents is granted." (The Order is attached hereto as Exhibit A.) Schwartz Cooper was not notified of Federal's application for the issuance of the subpoena duces tecum on January 10, 2008 (which is the subject of the proceedings before the Court), and the firm was never afforded the opportunity to object to the issuance of the subpoena. Prior to being served with the subpoena duces tecum, Schwartz Cooper was not even aware of the Order or the arbitration proceedings resulting in the Order.

In paragraph 7 of Federal's petition to enforce the subpoena against Schwartz Cooper in the proceedings before this Court, it asserts that the Order applies to Schwartz Cooper. Federal's motion to compel and supporting brief filed in the arbitration proceeding seeking the issuance of the Order (hereinafter "Motion to Compel" (attached hereto as Exhibit B)) relates only to material generated by the BRG – not Schwartz Cooper (Exhibit B, p. 1). It claims "EPS cannot withhold from Federal any materials generated by Bollinger Ruberry & Garvey" (*Id.*). Federal's

Motion to Compel makes no mention of, or requests for, any documents pertaining to Schwartz Cooper. There is nothing in the Order or Federal's Motion to compel which supports its claim that the Privilege issue applies to Schwartz Cooper – all that has been decided by the arbitrators is that the documents withheld by BRG were to be produced. Given the importance of the attorney-client privilege, the prejudicial effect of producing Privileged documents when the client has not agreed to waive the Privilege, Schwartz Cooper cannot produce the subpoenaed documents on the basis of the Order.

### Schwartz Cooper's Representation

Schwartz Cooper's caution with regard to preserving the Privilege is especially justified in this case where Federal's petition seeking enforcement by this Court of an arbitration subpoena based on an Order issued on Federal's representations that "BRG invoiced its insurers for the document analysis as well as the preparation of" certain of the documents, and Federal paid "millions of dollars to defend and indemnify EPS" (Exhibit B, p. 3, ¶¶ 6, 7). Federal also supported its Motion to Compel with a letter from BRG to Federal dated October 12, 2003, in which BRG made representations to Federal which are inconsistent with BRG's claim of Privilege (Exhibit B, p. 2 ¶ 4).

Federal argued in its Motion to Compel that, under the holding in *Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178 (1991), the Privilege does not apply to an insurance company that pays an attorney to defend the insured pursuant to the terms of the insurance contract (Exhibit B, pp. 1-3). It relies on *Waste Management* in paragraphs 7 and 8 of its petition before this Court. In *Waste Management*, the cooperation clause in the insurance policy under which the attorney is paid by the insurance company required the insured to "give all such information and assistance as the insurers may reasonably require." *Id*. 779-80. The

court found the clause "imposes a broad duty of cooperation and is without limitation or qualification" and

> represents the contractual obligations imposed upon and accepted by insureds at the time they entered into the agreement with insurers. *Id*. 780.

The court ruled that a "fair reading of the contract renders any expectation of attorney-client privilege under the circumstances, unreasonable." *Id*.

Federal's assertions in its Motion to Compel that the Privilege was waived because BRG had a duty to cooperate with Federal are based upon BRG's engagement under the terms of Federal's insurance contract. The Order issued upon these facts has no application here. Schwartz Cooper was never engaged to defend EPS pursuant to Federal's insurance contract: it was never paid for its services by Federal or by any other insurance company. Nor, unlike BRG, did Schwartz Cooper make any misrepresentations to Federal that were inconsistent with the claim of Privilege.

Federal is improperly relying upon an Order of the arbitrators that has no application to Schwartz Cooper's representation. In ruling on the Privilege, the arbitrators were presented with the critical fact that BRG, having been paid by Federal to defend under its insurance contract, was obligated under the cooperation clause of the contract, in which the Privilege could not be invoked. That ruling has no application to Schwartz Cooper, which was never afforded an opportunity to present to the arbitrators the reasons why the Order does not govern the Privileged documents it possesses.

## Conclusion

The Privilege cannot be discarded based on the arbitrators' Order. Here, Federal demands that Schwartz Cooper disregard the Privilege – without anything more than the Order

granting a motion to compel on facts that have no relevance to its representation. The subpoena duces tecum violates Illinois Supreme Court Rule 201(b)(2).

                              Respectfully submitted

                              Schwartz Cooper Chartered

                              By: ___s/Richard G. Schultz___
                                      One of its attorneys

Richard G. Schultz (ARDC No. 2515830)
Seth Mann Rosenberg (ARDC No. 6279711)
Schwartz Cooper Chartered
180 North LaSalle Street, Suite 2700
Chicago, Illinois 60601
312.346.1300

# Exhibit A

# American Arbitration Association

FEDERAL INSURANCE COMPANY ("CLAIMANT") AND EPS SOLUTIONS CORPORATION; ENTERPRISE PROFIT SOLUTIONS CORP. ("RESPONDENT") –
CHICAGO, ILLINOIS
CLAIM NON-MONETARY

Preliminary Hearing Scheduling Order # _____7_____    Case # 51 195 01043 04

REPORT OF PRELIMINARY HEARING, TELEPHONE CONFERENCE AND
SCHEDULING ORDER

Pursuant to the Commercial Arbitration Rules of the American Arbitration Association (AAA), a preliminary hearing was held by conference call on July 26, 2007, before Arbitrators Alexander R. Domanskis, J. Timothy Eaton and Richard Rhodes. Appearing at the hearing were Carissa Langston for the American Arbitration Association, Anne Blume for Claimant and Anthony Barone for Respondent.

By Agreement of the parties and Order of the Arbitrators, the following is now in effect:

1. Claimant's Second Motion to Compel Production of Documents is granted. Respondent is to produce documents to Claimant no later than August 26, 2007, and if Respondent requests further review whether certain documents should not be produced, then Respondent is to produce any such documents to the Arbitrators no later than August 26, 2007 for in camera determination.

2. If necessary, the parties are granted leave to file Motions to Compel Production of Documents up to and including August 9, 2007, the opposing party is given up to and including August 23, 2007, to respond and moving party is given up to and including August 30, 2007, to reply.

3. Written discovery, except for discovery related to experts, shall be completed on or before October 26, 2007. All discovery is to be completed on or before December 21, 2007.

4. A further preliminary hearing telephone conference shall take place on September 10, 2007 at 9:30 a.m. CST.

5. a) Pursuant to the direction of the Arbitrators, Claimant shall serve and file a disclosure of all witnesses reasonably expected to be called by the Claimant on or before January 7, 2008.

   b) Pursuant to the direction of the Arbitrators, Respondent shall serve and file a disclosure of all witness reasonably expected to be called by the Respondent on or before January 7, 2008.

   c) The disclosure of witnesses shall include the full name of each witness, a short summary of anticipated testimony, copies of any experts reports, and written C.V. of experts. If certain required information is not available, the disclosures shall so state. Each party shall be responsible for updating its disclosures as such information becomes available. The duty to update this information continues up to and including the date that hearing in this matter terminates.

  d) The parties shall make arrangements to schedule the attendance of witnesses so that the case can proceed with all due expedition and without any unnecessary delay.

  e) The party presenting evidence shall give notice to the other party the day before of the names of the witnesses who will be called to testify the next day and the order in which the witnesses will be called.

6. a) Not later than January 11, 2008, the parties shall exchange copies of (or, when appropriate, make available for inspection) all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the hearing. Each proposed exhibit shall be premarked for identification using the following designations:

| PARTY | EXHIBIT # | to | EXHIBIT # |
|---|---|---|---|
| _____ | _____ | | _____ |
| _____ | _____ | | _____ |
| _____ | _____ | | _____ |
| _____ | _____ | | _____ |

  b) The parties shall attempt to agree upon and submit a jointly prepared consolidated and comprehensive set of joint exhibits.

7. Hearing in this matter will commence before the Arbitrators at the law offices of Shefsky & Froelich, Ltd., 111 East Wacker Drive, Suite 2800, Chicago, Illinois on January 14, 2008 at 9:30 a.m. The parties estimate that this case may require up to ten (10) days of hearing time, inclusive of arguments, so Monday through Friday through January 25, 2008 is also reserved for the Hearing.

8. Any and all documents to be filed with or submitted to the Arbitrators outside the hearing,

  a. shall be given to the AAA Case Administrator and directly to the Arbitrators.

  b. COPIES OF SAID DOCUMENTS SHALL ALSO BE SENT SIMULTANEOUSLY TO THE OPPOSING PARTY. There shall be *no* direct oral communication between the parties and the arbitrators, except at oral hearings.

9. Pursuant to the direction of the Arbitrators, any other preliminary matters not otherwise provided for herein shall be raised by January 7, 2008.

10.     All deadlines stated herein will be strictly enforced. After such deadline, the parties may not file such motions except with the permission of the Arbitrators, good cause having been shown.

11.     This order shall continue in effect unless and until amended by subsequent order of the Arbitrators.

Dated:  as of July 26, 2007

_____
Arbitrator's Signature

_____
Arbitrator's Signature

_____
Arbitrator's Signature

# Exhibit B

IN THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No.: AAA No.: 51 195 01043 04 |
| EPS SOLUTIONS CORP. and | ) |
| ENTERPRISE PROFIT SOLUTIONS | ) |
| CORP., | ) |
| | ) |
| Defendants. | ) |

**FEDERAL INSURANCE COMPANY'S SECOND MOTION TO COMPEL**

Federal Insurance Company ("Federal") states as follows for its motion to compel:

1.   There are two issues in this motion to compel. First is the vast amount of documents from the Underlying Matters that EPS has withheld from production on the basis of the attorney-client privilege and attorney work product doctrine. A copy of EPS' privilege log is attached as Exhibit A. Second is the 1,650 pages of documents that EPS has not produced and which do not appear on its privilege log.

2.   Under well-settled Illinois law, EPS cannot withhold from Federal any materials generated by Bollinger Ruberry & Garvey ("BRG") in the Underlying Matters. See, *Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991) ("the attorney-client privilege and work-product doctrine are not applicable to bar disclosure of defense counsel's files in either the [underlying] litigations. The protections are, nonetheless, available to bar disclosure of any communications or materials generated in preparation for the present declaratory judgment action"); *CSX Transportation, Inc. v.*

*Lexington Ins. Co.*, 187 F.R.D. 555, 560 (N.D. Ill. 1999) (following *Waste Management*, holding that insurers defending insured's action for wrongful denial of coverage were entitled to depose defense counsel employed by insureds in underlying litigation as to substantive issues of that litigation, even though insurers did not provide and defense and did not participate in underlying action). The *Waste Management* court found that the materials were prepared for the mutual benefit of insureds and insurers against a third-party adversary. The insurers were not the adversary from whom the trial strategies and opinions required protection and the insurers were entitled to the documents. *Id.* at 330-31.

3. Federal's counsel conferred with EPS' counsel regarding these documents and EPS refuses to produce them claiming that they are attorney-client privileged communications regarding the affirmative case EPS initiated against Deloitte & Touche and Jefferies.

4. EPS' choice to file a separate lawsuit rather than filing a cross claim in the Underlying Matters does not alter the evaluation of the attorney-client privilege and the work product doctrines especially where, as here, EPS has represented to its insurers since the inception of these cases that its "strongest defense was a strong offense" and that its defense of the Underlying Matters was consistent with and factually the same as its offense in the affirmative case. Attached as Exhibit B is one of many letters from BRG, dated October 12, 2003, making these very representations to EPS' insurers including Federal.

5. EPS cannot have it both ways. EPS has billed its attorneys' time and all costs incurred in the affirmative case to its directors' and officers' liability insurers as its defense of the Underlying Matters and now seeks to hide its communications to the insured (and others) and its work product from its insurer. Such a result is impermissible under *Waste*

*Management*.

6. For example, it is inexplicable that a "memo regarding document analysis" could be withheld from the insurer based upon the work product doctrine yet EPS' privilege log contains several entries such as the following:

| Bate No. | Date | Document Description | Author | Recipient | CC | Type of Privilege |
|---|---|---|---|---|---|---|
| FED000461-464 | 4/7/01 | Memo regarding document analysis | Michael Hahn (BRG) | File, Clay Phillips (BRG), Steve Gistenson (SCGK) | | W/P |

Moreover, BRG invoiced its insurers for the document analysis as well as the preparation of this memo and, therefore, this document, like the rest, is not protected work product under *Waste Management*. A copy of this invoice is attached as Exhibit C.

7. It is logically inconsistent that EPS could have an attorney-client relationship with the claimants. For instance, EPS claims an attorney-client privilege with Jim Holden, Moses Chung, Price Pritchett and Tim O'Brien each of whom filed suit against EPS for which National Union, which issued the $10 million primary policy, and Federal, which issued the first layer of excess insurance coverage, paid millions of dollars to defend and indemnify EPS.

8. Despite the fact that National Union and Federal paid millions of dollars to various attorneys for EPS, Chris Massey, Erik Watts and Jeffrey Weinhuff for the defense of the Holden claims and Federal paid several million to Holden on behalf of EPS and Weinhuff in 2004 for a claim Holden made in November 2000, EPS seeks a privilege for

3

communications with Mr. Holden for the preparation of complaints just before Holden filed suit against EPS, as follows:

| Bate No. | Date | Document Description | Author | Recipient | CC | Type of Privilege |
|---|---|---|---|---|---|---|
| FED000075 | 9/25/00 | Email regarding EPS' claims against Deloitte & Touche | Jim Holden (EPS) | Mark Coleman (EPS) | Price Pritchett, Dave Hoffman, Tim O'Brien Edward Ruberry | A/C |
| FED000081-108 | 8/21/00 | Letter to counsel regarding EPS' claims against Deloitte & Touche complaint with attachments | Jim Holden (EPS) | Edward Ruberry (BRG) | | A/C |
| FED000001-110 | 8/21/00 | Letter to counsel regarding EPS' claims against Deloitte & Touche with attachments | Jim Holden (EPS) | Edward Ruberry (BRG) | | A/C |
| FED00000116-190 | 8/9/00 | Letter to client regarding EPS' claims against Deloitte & Touche with attachments | Eric Lynch (BRG) | Jim Holden (EPS) | | A/C |

Significantly, Holden filed his complaint against EPS just 6 days after EPS filed its affirmative case. A comparison of Holden's complaint against EPS and EPS' complaint in the affirmative case reveals staggering similarities.

9. Similarly, EPS claims that a memo regarding an interview with claimant Moses Chung is protected by the work product doctrine and, similarly that correspondence from claimant Price Pritchett to Edward Ruberry regarding "attached information" is somehow attorney-client privileged. The following entries are found on EPS' privilege log:

| Bate No. | Date | Document Description | Author | Recipient | CC | Type of Privilege |
|---|---|---|---|---|---|---|
| FED000073-74 | 10/10/00 | Memo regarding interview with Moses Chung | Eric Lynch (BRG) | File | | W/P |

4

| Bate No. | Date | Document Description | Author | Recipient | CC | Type of Privilege |
|---|---|---|---|---|---|---|
| FED0000262-273 | undated | Handwritten correspondence regarding attached information in furtherance of action against Deloitte & Touche | Price Pritchett (EPS) | Edward Ruberry (BRG) | | A/C |

      10.     EPS also erroneously asserts an attorney-client privilege with Ernst & Young regarding a document production. While the basis for the assertion of privilege for these documents is not clear, this work was also billed to EPS' insurers and thus not protected under *Waste Management*. For example, EPS claims privilege for the following:

| Bate No. | Date | Document Description | Author | Recipient | CC | Type of Privilege |
|---|---|---|---|---|---|---|
| FED000948-50 | 1/10/02 | Letter requesting confirmation of document review | Michael Hahn (BRG) | Joel Bonner (EY) | Edward Ruberry (BRG) | A/C |
| FED000951-53 | 1/7/02 | Letter regarding stipulations concerning document review | Joel Bonner (EY) | Michael Hahn (BRG), Kathleen Bardell (BRG) | Mark Coleman (EPS), Edward Ruberry (BRG) | A/C |

A copy of the invoice on which this time is billed to the insurers is attached as Exhibit D.

      11.     Similarly, National Union and Federal have paid significant sums of money to defend and for indemnity payments on behalf of Jeffery Weinhuff who was an EPS director yet EPS now claims that a memo its counsel prepared for "legal analysis of demand for indemnification for Weinhuff" is entitled to work product protection. In this regard, EPS also claims privilege over an "email regarding filing of Horowitz action" for which EPS' insurers have paid significant sums to defend EPS and "email regarding shipment of documentation." For example, EPS' privilege log contains the following entries:

| Bate No. | Date | Document Description | Author | Recipient | CC | Type of Privilege |
|---|---|---|---|---|---|---|
| FED000347-348 | 8/11/01 | Email regarding filing of Horowitz action | Mark Coleman (EPS) | Edward Ruberry (BRG) | David Hoffman (EPS), Clay Phillips (BRG), Howard Adelman (AGMBC) | A/C |
| FED000349-351 | 8/9/01 | Email regarding shipment of documentation | Mark Coleman (EPS) | Michael Hahn (BRG), Karen Wilgus (SCGK) | Edward Ruberry (BRG), Cliff Gutmann (EPS), Julianna Kirby (EPS) | A/C |
| FED000354-357 | 8/2/01 | Email regarding requested documentation | Mark Coleman (EPS) | Michael Hahn (BRG), Karen Wilgus (SCGK) | Edward Ruberry (BRG), Cliff Gutmann (EPS), Julianna Kirby (EPS) | A/C |

Indeed, it is unclear why these emails would be privileged especially since EPS billed its insurers for this work which is therefore not protected under *Waste Management*. A copy of these invoices is attached as Exhibit E.

12. EPS cannot claim that its defense of the Underlying Matters is the same as its offense in its affirmative case and obtain the benefits of the coverage of its directors' and officers' liability insurance policies and simultaneously claim that its work product in these cases and its communications with Federal's insured, EPS, is privileged. All of the documents from the Underlying Matters that have been withheld were presumably generated on behalf of both EPS and Federal. EPS represented to its insurers that its interests were the same in the affirmative case and in its defense of the Underlying Matters yet EPS now asserts a different result.

13. These examples are random samples of the documents withheld by EPS under

6

cover of attorney-client privilege and work product doctrine. As demonstrated above, these documents are not protected and should be produced. For the reasons stated above, Federal respectfully requests that this panel order that EPS produce all of the documents listed on its privilege log within 7 days.

14.    EPS has not explained how 1,650 pages of documents not on its privilege log were not produced to Federal. A copy of this list is attached as Exhibit F. Accordingly, Federal respectfully requests that this panel order that EPS produce all of the documents listed on its privilege log within 7 days.

WHEREFORE, Federal Insurance Company respectfully requests that this Panel enter an Order granting its Motion to Compel.

Dated:        April 27, 2007

                                             _____
                                             One of the attorneys for Federal Insurance
                                             Company

Janet R. Davis
Anne L. Blume
Gary L. Gassman
Meckler Bulger & Tilson LLP
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Tel:   312/474-7900
Fax:   312/474-7898

O:\6760\Arbitration Pleadings\eps motion to compel.2.doc

7