IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SCHWARTZ COOPER, CHARTERED<br><br>Defendant. | No.: 08 C 786<br><br>Judge Coar |

### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR EXPEDITED PRODUCTION AND ENFORCEMENT OF AN ARBITRATION SUBPOENA

Federal Insurance Company ("Federal") states as follows as its reply memorandum in support of its request for expedited production and enforcement of an arbitration subpoena with which Schwartz Cooper Chtd. ("Schwartz Cooper") has refused to comply:

**I.   RELEVANT FACTS**

On November 22, 2000, Schwartz Cooper filed a lawsuit on behalf of EPS Solutions Corporation and Enterprise Profit Solutions (collectively, "EPS") in the United States District Court for the Northern District of Illinois against Deloitte & Touche ("D&T") and Jefferies & Company alleging that their key partners, Christopher Massey, Erik Watts and Jeffery Weinhuff, committed various frauds in the promotion of EPS (the "Affirmative Case"). EPS alleged that it was promoted as a "roll-up" into which D&T sold one of its business units and to which various other individuals and entities sold the assets of their companies in exchange for cash and shares of EPS stock. As Massey, Watts and Weinhuff became EPS' directors and officers, roll-up participants then filed suit against EPS and Massey, Watts and Weinhuff (the "Underlying Matters") based upon materially similar allegations EPS made in the Affirmative Case.

Federal issued a policy of Directors, Officers and Corporate Liability insurance coverage to EPS which provided $15 million of insurance coverage in excess of the $10 million primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. for the period of June 1, 2000 through June 1, 2001. These policies, and others in excess of Federal's policy, have been called upon to defend and indemnify EPS and Massey, Watts and Weinhuff in the Underlying Matters.

Federal is presently engaged in an arbitration with EPS and its counsel, Bollinger Ruberry & Garvey ("BRG"), pending in the American Arbitration Association (the "Arbitration") in which Federal seeks a declaration regarding its rights and obligations under the policy of insurance that it issued to EPS.[1] Among the issues in the Arbitration is whether EPS breached the policy's cooperation clause and the implied covenant of good faith and fair dealing when it filed the Affirmative Case and whether the "insured versus insured" exclusion precludes coverage for the Underlying Matters. In this regard, the policies contain the following exclusion:

> the Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
> (i)  which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any insured; . . .

EPS' shareholders filed suit against EPS, Massey, Watts and Weinhuff which Federal contends were "instigated" by the investigation of and the filing of Affirmative Case and "continued" with the "assistance" and "active participation" of EPS in its prosecution of the Affirmative Case. Schwartz Cooper represented EPS in the Affirmative Case until June 4, 2004.

---

[1] On January 25, 2008, BRG was granted leave to intervene in the arbitration to recover its allegedly unpaid legal fees in the amount of approximately $2.2 million by virtue of an assignment of that claimed right from EPS.

In the Arbitration, Federal served requests for the production of documents to EPS which included, *inter alia*, the following:

>    9.   All invoices for legal services relating to the Underlying Matters and the Affirmative Case including, but not limited to, those which pre-date December 2000.
>
>    10.  All documents from any source whatsoever relating to the investigation of the claims in the Affirmative Case and the Underlying Matters.
>
>    11.  All notes, diaries or minutes of meetings which reflect or relate to the investigation of the claims in the Affirmative Case and the Underlying Matters.
>
>    12.  All invoices from any source whatsoever relating to the investigation of the claims in the Affirmative Case and the Underlying Matters.
>
>    13.  All documents that refer or relate to the preparation of the Complaint filed in the Affirmative Case.
>
>    14.  All documents sent to or received from any claimant in any of the Underlying Matters that refer or relate to the Underlying Matters and/or the Affirmative Case.

A copy of the production requests is attached as Exhibit A.

EPS withheld documents relating to the Affirmative Case from production on the basis of attorney-client and work product privileges. On April 27, 2007, Federal filed a motion to compel based upon EPS' representations to its insurers that the facts and legal theories at issue in the Underlying Matters were the same as those in the Affirmative Case and the Underlying Matters and based upon an August 28, 2002 Order issued by Judge Gettleman in the Affirmative Case which holds that the factual and legal issues in the Affirmative Case were the same as those in the Underlying Matters. Judge Gettleman's Order states, in relevant part, as follows:

>    It is true, however, as Deloitte & Touche asserts, that all of the factual allegations and legal theories of misconduct alleged in the instant [EPS] complaint are also alleged in the arbitration cross-claim [by EPS]. Thus, Deloitte & Touche is also correct that EPS has created a situation where it is prosecuting simultaneously two actions that require the same proof for different claims. All parties have

> acknowledged that discovery in the two matters overlap, and even plaintiff [EPS] must acknowledge that absent its limited claim for damages in the arbitration, the pleadings in the two cases are substantially identical.

A copy of Judge Gettleman's opinion is attached as Exhibit B. Federal argued in its motion to compel that since EPS represented that the facts and legal issues in the Affirmative Case and the Underlying Matters were one and the same, that the documents relating to the Affirmative Case were, like those relating to the Underlying Matters, prepared for the mutual benefit of both EPS and its insurers and that the attorney-client privilege and work product doctrine did not preclude production to Federal pursuant to *Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991).

The Arbitration Panel agreed and issued an Order on July 26, 2007 (the "Order") requiring EPS to produce these documents to Federal. A copy of the Panel's July 26, 2007 Order is attached as Exhibit C.

Thereafter, the Arbitration Panel issued a subpoena *duces tecum* to Schwartz Cooper which Federal served on January 18, 2008. A copy of the subpoena and rider is attached as Exhibit D. In the subpoena, Federal requested production of documents relating to, *inter alia*, communications with the claimants in the Underlying Matters.

While Schwartz Cooper has broadly asserted "privilege" it has never explained how many of the documents requested in the subpoena could be privileged. For example, there is no reason to believe that a privilege attaches to any document Schwartz Cooper received from any of the claimants in the Underlying Matters or from their lawyers.

Indeed, without providing any real reason for its failure to do so, Schwartz Cooper refused to comply with the subpoena and on February 5, 2008 Federal filed the Petition to Enforce Arbitration Subpoena that is presently before this Court. Since time is of the essence for

Federal to obtain the documents which are the subject of the subpoena because the documents are essential to Federal's discovery in the Arbitration and the preparation of its case, Federal also filed the motion for expedited production at issue.

## II. ARGUMENT

### A. Schwartz Cooper's Client, EPS, Is Bound by the Arbitration Panel's Ruling

The Arbitration Panel ruled that Federal and EPS had aligned interests in the Underlying Matters and the Affirmative Case such that the attorney-client privilege and work product doctrine were inapplicable and did not bar production of documents to Federal relating to communications between EPS and its counsel pursuant to *Waste Management*. *Waste Management* holds that the attorney-client privilege does not bar discovery of communications between the insured and its counsel in a subsequent controversy between the insured and its insurer. 579 N.E.2d at 327-329.

Schwartz Cooper's argument that the Arbitration Order related only to documents withheld by BRG and does not apply to Schwartz Cooper is incorrect. The Arbitration Panel ruled that the attorney-client privilege and the work product privileges asserted in the Affirmative Case did not apply. This ruling is binding upon EPS as EPS is the holder of the privilege. *See, In re Marriage of Decker*, 606 N.E.2d 1094, 1101 (Ill. 1993) ("It is well established that the [attorney-client] privilege belongs to the client, rather than the attorney, although the attorney asserts the privilege on behalf of his client"); *Hayes v. Burlington Northern & Santa Fe Railway Co.*, 752 N.E.2d 470, 478 (Ill. App. Ct. 2001) ("The attorney-client privilege belongs to and can only be waived by the client"). Since EPS is bound by the Order, Schwartz Cooper should be compelled to produce the subpoenaed documents to Federal.

Schwartz Cooper complains that it was "never afforded an opportunity to present to the arbitrators the reasons which the Order does not govern the privileged documents it possesses" but never explains how its representation of EPS in the Affirmative Case is any different than that of BRG. Moreover, on behalf of EPS, BRG did oppose Federal's motion to compel. While Schwartz Cooper concludes that since it was not paid by the insurance companies and did not make any representations to the insurers, the Arbitration Panel's ruling cannot apply to the documents in its possession. Schwartz Cooper is wrong. As stated in *Waste Management*:

> . . . we believe that the [common interest] doctrine may properly be applied where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer. (See *Rogers v. Robson* (1979), 74 Ill.App.3d 467, 472, 30 Ill.Dec. 320, 392 N.E.2d 1365 (when insurer retains attorney to defend insured, attorney represents both insured and insurer in furthering interests of each); see also *Latronica v. Royal Indemnity Co.* (1956), 8 Ill.App.2d 337, 343, 132 N.E.2d 16 (in matters of defense and settlement insurer and insured should have common interest).) It is the commonality of interests which creates the exception, not the conduct of the litigation.

*Id.* at 329.

Like the insurers in *Waste Management*, Federal argued in its motion to compel that EPS has represented that it shared a common interest with Federal in both the Underlying Matters and the Affirmative Case and that EPS must therefore produce all documents relating to communications between EPS and its counsel in the Underlying Matters and the Affirmative Case. The Arbitration Panel agreed and its Order is binding upon EPS. The Order therefore encompasses the subpoenaed documents in Schwartz Cooper's possession as those documents relate to communications between EPS and Schwartz Cooper concerning the Affirmative Case.

Moreover, contrary to the Schwartz Cooper's assertion that the Arbitration Panel's ruling related only to documents withheld by BRG, Federal's motion to compel requested production of

6

all documents from the Underlying Matters and the Affirmative Case which EPS withheld from production on the basis of the attorney-client privilege and attorney work product. The Order therefore encompasses documents in Schwartz Cooper's possession.

### B. Federal Requests An Expedited Order Granting Its Petition

Time is of the essence for Federal to obtain Schwartz Cooper's documents as there is a significant amount of discovery to be conducted relative to which Schwartz Cooper's documents are critical to Federal's ability to conduct discovery and prepare its case for arbitration. The Arbitration Panel recently continued the fact and expert discovery closure date to March 21, 2008 and the hearing dates to late May 2008. Compliance with these dates necessitates Federal's request for an expedited ruling requiring the Schwartz Cooper to produce documents responsive to the arbitration subpoena as soon as possible.

### III. Conclusion

WHEREFORE, Federal respectfully requests that the Court enter an expedited Order granting Federal's Petition to Enforce Arbitration Subpoena and award such other and further relief as is just and proper.

Date: March 6, 2008

_____
One of the attorneys for Federal Insurance Company

Janet R. Davis
Anne L. Blume
Meckler Bulger & Tilson LLP
123 North Wacker Drive
Suite 1800
Chicago, Illinois 60606
Tel: 312/474-7900
Fax: 312/474-7898
O:\6760\Schwartz Cooper Proceedings\reply memorandum.doc